UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| HENRY ROGERS, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | CIVIL CASE NO. |
| CAPITAL ONE SERVICES, LLC, | : | 10-cv-398 (VLB) |
| UNITED RECOVERY SYSTEMS, LP, | : | |
| AND CAPITAL ONE BANK (USA), N.A. | : | February 19, 2011 |

MEMORANDUM OF DECISION GRANTING IN PART AND
DENYING IN PART DEFENDANTS CAPITAL ONE SERVICES, LLC
AND CAPITAL ONE BANK (USA), N.A.'S MOTION TO DISMISS [Doc. #20],
GRANTING DEFENDANT UNITED RECOVERY SYSTEMS, LP'S MOTION TO
DISMISS [Doc. #22], AND GRANTING IN PART AND DENYING IN PART
PLAINTIFF HENRY ROGERS' MOTION TO AMEND HIS COMPLAINT [Doc. #43]

The plaintiff, Henry Rogers ("Rogers"), brought this putative class action against defendants Capital One Services, LLC ("Capital One Services"), Capital One Bank (USA), N.A. ("Capital One Bank"), and United Recovery Systems, LP ("URS") alleging violations of the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq.[1]

Presently pending before the Court are motions to dismiss filed by Capital One Services and Capital One Bank (collectively the "Capital One Defendants") [Doc. #20], and by URS [Doc. #22]. Also pending is a motion to amend filed by Rogers. [Doc. #43]. Rogers seeks leave to amend his complaint to eliminate his two withdrawn claims and to assert against the Capital One Defendants violations

---

[1] Rogers' amended complaint also alleged claims for violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a et seq., and common law fraud, but he later withdrew those claims. See Pl. Mem. Opp. Mot. Dismiss at 2.

of the Connecticut Creditors' Collection Practices Act ("CCPA"), Conn. Gen. Stat. § 36a-645 et seq., and regulations promulgated thereunder.  Id.  For the reasons stated below, the Capital One Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART, and URS's motion to dismiss is GRANTED.  Rogers' motion to amend is GRANTED IN PART and DENIED IN PART.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Rogers' amended complaint alleges the following facts, which are taken as true for purposes of the instant motions.  Rogers, a resident of Mystic, Connecticut, holds a consumer credit account with Capital One Bank, which has its principle of business in McLean, Virginia.  Capital one Bank is a National Banking Association and wholly owned subsidiary of Capital One Financial Corporation ("COFC").  In or around February 2010, Rogers received a letter signed by Capital One Services (hereinafter the "Letter"), a Delaware limited liability company and subsidiary of Capital One Bank, which is engaged in the business of collecting debts on behalf of Capital One Bank and other COFC subsidiaries.  The Letter, which is incorporated into the amended complaint, identifies Capital One Bank as the "creditor" on Rogers' account and advises Rogers that the annual percentage rate on his credit card account will be reduced to 0% if he calls a toll-free number to makes arrangements for an acceptable repayment plan.  The Letter further states that, if he fails to make payments as agreed under the repayment plan, then his annual percentage rate will return to 19.90%.

2

The Letter does not specifically indicate that Rogers' account is delinquent, but contains language suggesting as much.  For instance, the first paragraph of the Letter states "We realize circumstances can sometimes make it difficult to manage your finances.  The good news is – there's a way to pay it off."  Am. Compl. ¶ 10.  Similarly, there is a post-script inviting Rogers to "Call today at 1-800-258-9319 to make payment arrangements and start to resolve your debt."  Id. The final paragraph of the Letter notifies Rogers that if his account is being served by "one of our external agencies, they will be able to assist you and will notify us when you have made acceptable arrangements with them."  Am. Compl. ¶ 10.  Telephone calls to the toll-free number listed in the Letter are redirected to URS, a Texas corporation engaged in the business of collecting, or attempting to collect, debts owed or due or asserted to be owed or due to another.  While the Letter informed Rogers that his account might be handled by an external agency, it did not specifically identify URS.

The bottom of the first page of the Letter contains the following text: "NOTICE:  PLEASE SEE REVERSE SIDE FOR IMPORTANT INFORMATION."  Id. The reverse side of the Letter makes a series of disclosures.  Capital One Services makes clear that it is the entity sending the Letter, that it is a subsidiary of Capital One Bank, and that it provides services to Capital One affiliates:

> Who We Are and Who We Service.  Capital One Services, LLC is a subsidiary of Capital One, National Association, and services the following Capital One affiliated companies:
>        Capital One Bank (USA), National Association;
>        Capital One, National Association; and
>        Capital One Auto Finance, Inc.

3

Id. ¶ 11.  The reverse side of the Letter also includes a series of disclosures required by state and local law of various jurisdictions.  One of these disclosures, which applies to individuals receiving the Letter in Connecticut as well as multiple other States, provides as follows:  "This is an attempt to collect a (consumer) debt (claim).  Any information obtained will be used for that purpose."  Id.  Another disclosure, which applies only to individuals receiving the Letter in Iowa, states:  "This communication is from a debt collector."  Id.

Rogers claims that the Letter deceives and misleads consumers in the following ways.  First, he claims it omits "any mention of the consumer's right, under Federal law, to dispute the debt or to obtain verification of the debt.  Id. ¶ 15.  Second, he claims it deceives and misleads by "creating the false impression that it is transmitted by Capital One [Bank]," when in fact it is transmitted by Capital One Services, "on its own behalf and on behalf of" URS.  Id. ¶ 16.  Third, he claims the Letter fails to "effectively communicate that it is transmitted by a 'debt collector.'"  Id. ¶ 17.  Finally, he claims the Letter entices the addressee to contact Capital One Services and URS by offering an annual percentage rate of 0% on his debt if he makes an acceptable repayment plan and threatening that his annual percentage rate will "return to 19.90%" on the entire debt if that agreement is not honored.  Id. ¶ 18.

The Letter was the first written communication transmitted to and received by Rogers in which any debt was noted with reference to his credit account with Capital One Bank.  He does not indicate whether he had previously received a bill

4

from Capital One Bank.  Nor does not allege what, if any, action he took in response to the Letter.

The amended complaint also contains class action allegations asserting that the Letter received by Rogers is a mass-mailed form letter substantially similar to thousands of letters sent to consumers across the country. Accordingly, Rogers seeks certification of a class pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and all others similarly situated.  The proposed class is defined as:  "All consumers to whom a letter in the form of the Letter was sent by the Defendants into the State of Connecticut within one year prior to the filing date of this action and which was not returned as undeliverable."  Id. ¶ 20.

Rogers filed this action on March 16, 2010.  [Doc. #1].  He filed his amended complaint on May 6, 2010.  [Doc. #18].  The defendants filed their motions to dismiss on May 20, 2010.  [Doc. ##20, 22].  They move to dismiss the amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure or, in the alternative, to strike the class action allegations in the amended complaint. Rogers filed a joint opposition to both motions on June 10, 2010.  [Doc. #31].  The defendants filed a joint reply on June 17, 2010.  [Doc. #33].  Subsequently, on July 19, 2010, Rogers filed his motion to amend his complaint in order to omit his two withdrawn claims and to add four additional claims against the Capital One Defendants for violation of the CCPA and regulations promulgated thereunder. [Doc. #43].  The Capital One Defendants filed an opposition to the motion to

5

amend on August 9, 2010, arguing that the proposed CCPA claims are futile.
[Doc. #47].

## II. <u>STANDARD OF REVIEW</u>

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a
'short and plain statement of the claim showing that the pleader is entitled to
relief.'" <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009).  While Rule 8 does not
require detailed factual allegations, "[a] pleading that offers 'labels and
conclusions' or 'formulaic recitation of the elements of a cause of action will not
do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of
'further factual enhancement.'"  <u>Id.</u> (internal quotations omitted).  "To survive a
motion to dismiss, a complaint must contain sufficient factual matter, accepted
as true, to 'state a claim to relief that is plausible on its face.'  A claim has facial
plausibility when the plaintiff pleads factual content that allows the court to draw
the reasonable inference that the defendant is liable for the misconduct alleged."
<u>Id.</u> (internal citations omitted).

In considering a motion to dismiss for failure to state a claim, the Court
should follow a "two-pronged approach" to evaluate the sufficiency of the
complaint.  <u>Hayden v Paterson</u>, 594 F.3d 150, 161 (2d Cir. 2010).  "A court 'can
choose to begin by identifying pleadings that, because they are no more than
conclusions, are not entitled to the assumption of truth.'"  <u>Id.</u> (quoting <u>Iqbal</u>, 129
S.Ct. at 1949-50).  "At the second step, a court should determine whether the
'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an
entitlement to relief.'"  <u>Id.</u> (quoting <u>Iqbal</u>, 129 S.Ct. at 1950).  "The plausibility

standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Iqbal, 129 S.Ct. at 1949 (internal quotation marks omitted).

### III.  DISCUSSION

#### A.  FDCPA Claims Against Capital One Defendants

The Capital One Defendants argue that Rogers' FDCPA claims against them should be dismissed because neither company is a "debt collector" under the FDCPA.  Rogers alleges violations of 15 U.S.C. §§ 1692e, 1692f, and 1692g. Each of these provisions proscribes the conduct of debt collectors solely.  See id.; Williams v. Citibank, N.A., 565 F. Supp. 2d 523, 528 (S.D.N.Y. 2008).  Therefore, the Court must determine whether Rogers has sufficiently alleged that both of the Capital One Defendants are debt collectors under the FDCPA.

The FDCPA defines a "debt collector" as:

[A]ny person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6).  Generally, creditors are not subject to the FDCPA.  See Maguire v. Citicorp Retail Servs., Inc., 147 F.3d 232, 235 (2d Cir. 1998).  However, under the "false name" exception, a creditor becomes subject to the FDCPA as a debt collector if the creditor "in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts."  15 U.S.C. § 1692a(6).

7

**1.**  <u>Claims as against Capital One Bank</u>

Rogers refers to Capital One Bank as a creditor in his amended complaint. Further, the Letter explicitly identifies Capital One Bank as Rogers' creditor.  In his opposition to the motion to dismiss, Rogers does not dispute that Capital One Bank is a creditor under the FDCPA.[2]  Nevertheless, Rogers contends that Capital One Bank may be held liable under the FDCPA based upon the "false name" exception set forth in 15 U.S.C. § 1692a(6).  This exception applies to any creditor who, in the process of collecting or attempting to collect its debts, "indicate[s] that a third party is collecting or attempting to collect such debts, . . . pretends to be someone else or uses a pseudonym or alias, . . . or [who] owns and controls the debt collector, rendering it the creditor's alter ego."  <u>See</u> <u>Mazzei v. Money Store</u>, 349 F. Supp. 2d 651, 659 (S.D.N.Y.2004) (internal quotations and citations omitted).

Conspicuously absent from Rogers' amended complaint is any allegation that Capital One Bank, his creditor, is collecting or attempting to collect its own debt, as he would need to demonstrate in order for the false name exception to apply.  Rather, the amended complaint states that the debt was "transferred" to debt collectors, namely Capital One Services and URS, "for handling."  Am. Compl. ¶ 40.  Further, the Letter is signed by Capital One Services, and the

_____

[2]  The FDCPA defines a creditor as "any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another." 15 U.S.C. § 1692a(4).

amended complaint acknowledges that the Letter was transmitted by Capital One Services, "on its own behalf and on behalf of [URS]."  Id. ¶ 16.  Capital One Bank cannot be held liable under the false name exception merely because it employed a debt collector to recover its debt.  See Williams, 565 F. Supp. 2d at 529 ("[T]he mere fact that a creditor employs a debt collector to recover its debts does not make the creditor vicariously liable for the acts of the debt collector.").

The cases cited by Rogers in his opposition are inapposite because they involve situations in which the creditor itself or an employee of the creditor was attempting to collect the creditor's debt.  See Maguire, 147 F.3d at 237 (reversing grant of summary judgment where Letter from creditor created the erroneous impression that a third party was collecting its debts); Britton v. Weiss, No. 89-CV-143, 1989 WL 148663, at *2 (N.D.N.Y. Dec. 8, 1989) (applying false name exception where Letter written by creditor's employee gave impression that debt was being collected by an independent attorney not collecting debts in the name of the creditor).  Rogers has not alleged that anyone at Capital One Bank ever communicated with him at all, let alone used the name of Capital One Services, URS, or any other person or entity for the purpose of attempting to collect its debt.  Nor has Rogers alleged any facts to support a theory that Capital One Services or URS is an "alter ego" of Capital One Bank.  In his amended complaint, Rogers alleges that Capital One Services is a subsidiary of Capital One Bank; however, the amended complaint does not allege the extent of Capital One Bank's ownership or that it controls the activities of Capital One Services.  Therefore, the false name exception cannot apply, and the Capital One Defendants' motion to

dismiss is granted with respect to the FDCPA claims against Capital One Bank. See Jenkins v. Union Corp., 999 F. Supp. 1120, 1143-44 (N.D. Ill. 1998) (holding that parent corporation could not be held liable for its subsidiary's debt collection practices because there was no evidence that subsidiary was subject to parent's total control); Wood v. Capital One Services, LLC, 718 F. Supp. 2d 286, 291 (N.D.N.Y. June 18, 2010) (holding, in a similar case against the Capital One Defendants, that Capital One Bank was not liable under the "false name" exception because plaintiff's complaint failed to allege that Capital One Bank was collecting or attempting to collect its own debts).

### 2.  Claims as against Capital One Services

The amended complaint further alleges that Capital One Services is engaged in the principal business of collecting debts on behalf of Capital One Bank and other COFC subsidiaries.  Am. Compl. ¶ 8.  The FDCPA excludes from its definition of "debt collector" any entity acting as a debt collector for another entity where both entities are "related by common ownership or affiliated corporate control, if the person acting as a debt collector does so only for persons to whom it is so related or affiliated and if the principal business of such person is not the collection of debts." 15 U.S.C. § 1692a(6)(B).  Thus, "a corporate affiliate is excluded from the [FDCPA's] coverage so long as it satisfies two conditions:  [i] the affiliate collects debts only for entities with which it is affiliated or related; and [ii] the principal business of the affiliate is not debt collection."  Burns v. Bank of America, 655 F. Supp. 2d 240, 255 (S.D.N.Y. 2008).

Rogers concedes that Capital One Services satisfies the first condition, as the amended complaint affirmatively alleges that Capital One Services is a subsidiary of Capital One Bank and collects debts only for COFC-related entities. Am. Compl. ¶ 8.  The Capital One Defendants argue, however, that Capital One Services nevertheless qualifies for the affiliate exception because Rogers has not alleged sufficient facts to support his allegation that Capital One Services' principal business is debt collection.

The Court finds that the amended complaint sufficiently alleges that Capital One Services is not covered by the affiliate exception.  Rogers alleges "upon information and belief" that the principal business of Capital One Services is the collection of debts on behalf of Capital One Bank and other COFC subsidiaries. Am. Compl. ¶ 8.  Furthermore, Rogers asserts that Capital One Services sent the Letter regarding his delinquent account with Capital One Bank.  Am. Compl. ¶ 10-11, 16.  The reverse side of the Letter contains the following disclosure pertaining to individuals, such as Rogers, who received the Letter in Connecticut:  "This is an attempt to collect a (consumer) debt (claim).  Any information obtained will be used for that purpose."  Id. at 11.[3]  These allegations go beyond the conclusory

---

[3]  Another disclosure, which applies only to individuals receiving the Letter in Iowa, states:  "This communication is from a debt collector."  Id.  However, as the defendants correctly note, this disclosure is made pursuant to Iowa law, and the definition of "debt collector" under Iowa law is much broader than the FDCPA definition.  Iowa's Debt Collection Practices Act defines a debt collector as "a person engaging, directly or indirectly, in debt collection, whether for the person, the person's employer, or others . . ."  Iowa Code Ann. § 537.7102.  Therefore, Capital One Services' inclusion of this disclosure is not indicative of its status under the FDCPA.

assertion that Capital One Services is a debt collector under the FDCPA.  <u>See</u>
<u>Wood</u>, 718 F. Supp. 2d at 290 (holding the same in a very similar case against the
Capital One Defendants).

      The Capital One Defendants argue that Rogers' allegation that the principal
business of Capital One Services is debt collection is contradicted by language in
the Letter stating that Capital One Services "services . . . Capital One affiliated
companies" and is "the current servicer of your Account."  Am. Compl. ¶ 11.  In
support of this argument, the Capital One Defendants cite cases in which district
courts dismissed FDCPA claims against mortgage servicers on the basis that
servicers do not qualify as debt collectors under the FDCPA.  <u>See</u> <u>Schuh v.
Druckman & Sinel, L.L.P.</u>, 602 F. Supp. 2d 454, 463 (S.D.N.Y. 2009) (dismissing
FDCPA claim on the basis that complaint did not allege facts showing that
defendant was in the principal business of collecting debts, but instead alleged
that defendant was a servicer of mortgages); <u>Mitchell v. EMC Mortgage Corp.</u>, No.
CV-09-1362-PHX-NVW, 2009 WL 3274407, at *5 (D. Ariz. Oct. 13, 2009) (dismissing
FDCPA claim on the ground that defendant, a mortgage servicing company, was
not a debt collector under the FDCPA).  These cases are distinguishable,
however, because there is no indication that the plaintiffs made an allegation that
the defendants regularly engaged in the business of debt collection as does
Rogers.

      Here, by contrast, Rogers factually alleges that the principal business of
Capital One Services is debt collection and that Capital One Services sent a
Letter to him attempting to collect a debt owed on his credit card account.  The

fact that Capital One Services may also be in the business of servicing credit card accounts does not necessarily mean that its principal business is not debt collection.  A determination as to what is the principal business of Capital One Services is best left for the summary judgment stage, after the parties have an opportunity to exchange discovery regarding this matter.  For purposes of a motion to dismiss, Rogers has plausibly alleged that Capital One Services is a debt collector under the FDCPA.  Therefore, the Capital One Defendants' motion to dismiss is denied with respect to the FDCPA claims against Capital One Services.

### B.  FDCPA Claims Against URS

URS argues that the FDCPA claims against it should be dismissed because all of those claims are based upon his receipt of the Letter and URS did not author or send the Letter to him.  Therefore, URS claims, it cannot be held liable for the "use of any false, deceptive, or misleading representation or means in connection with the collection of any debt" in violation of 15 U.S.C. § 1692e, for the "use [of] unfair or unconscionable means to attempt to collect a debt" in violation of 15 U.S.C. § 1692f, or for failing to make certain disclosures as required by 15 U.S.C. § 1692g(a).

The Letter, which forms the basis of all of Rogers' claims, is signed by Capital One Services, and Rogers alleges in the amended complaint that Capital One Services transmitted the Letter to him.  Am. Compl. ¶ 10.  The amended complaint does not expressly allege that URS authored or sent the Letter.  Nevertheless, Rogers argues in opposition to URS's motion to dismiss that URS

may be held liable for representations made in the Letter because the amended complaint alleges that URS and Capital One Services were "operating in tandem," Am. Compl. ¶ 1, and that Capital One Services sent the Letter "on its own behalf and on behalf of" URS.  Am. Compl. ¶ 16.  Rogers claims that it is plausible to infer that URS "knew about and authorized the Letter" because telephone calls to the toll-free number included in the Letter are redirected to URS.  Pl. Mem. in Opp. to Mot. to Dismiss at 12.

URS argues, on the other hand, that it is implausible to infer that Capital One Services drafted the Letter "on behalf of" URS because the only plausible relationship between the parties in light of the allegations made in the amended complaint is one in which "Capital One" (presumably, both Capital One Bank and Capital One Services collectively) acted as the principal and URS served as an agent for purposes of collection of the debt owed by Rogers to Capital One Bank. URS's Mem. in Support of Mot. to Dismiss at 5.

The Court agrees with URS's position.  The facts alleged in the amended complaint do not support an inference that URS was responsible for authoring or sending the Letter which forms the basis of all of Rogers' claims.  Instead, the amended complaint makes clear that Capital One Bank is Rogers' creditor and therefore the owner of the debt, that Capital One Services is a subsidiary of Capital One Bank involved in the collection of debts for Capital One Bank and other COFC subsidiaries, and that URS is a third-party corporation engaged in the business of collecting debts for others.  Am. Compl. ¶¶ 7-9.  The amended complaint further alleges that Capital One Bank "transferred" the debt to Capital

14

One Services and URS "for handling."  Id. ¶ 40.  Therefore, based upon the allegations of the amended complaint, the only plausible inference that may be drawn is that URS was retained by Capital One Bank or its subsidiary, Capital One Services, to collect debts owed to Capital One Bank.  URS cannot be held vicariously liable for actions taken by Capital One Bank and/or Capital One Services over which it had no control.  See, e.g., Clark v. Capital Credit & Collection Services, Inc., 460 F.3d 1162, 1173 (9th Cir. 2006) ("Under general principles of agency – which form the basis of vicarious liability under the FDCPA – to be held liable for the actions of another, the 'principle' must exercise control over the conduct or activities of the 'agent.'") (citations omitted); Byrd v. Law Offices of John D. Clunk Co., LPA, No. 1:09-cv-076, 2010 WL 816932, at *8-9 (S.D. Ohio Mar. 8, 2010) (granting summary judgment for debt collector on FDCPA claim because it did not exercise control over contents of communication at issue).

Although Rogers conclusorily asserts that Capital One Services and URS were "operating in tandem" and that the Letter was sent "on behalf of" URS, the lack of legal terminology defining the nature of the conduct and the nebulous facts pleaded are neither clear nor concise enough to support such a claim.  The mere fact that calls to the toll-free number contained in the Letter are redirected to URS does not somehow equate to URS exerting control over the actions of Capital One Services and thereby render URS liable for alleged misrepresentations or omissions in the Letter.  Instead, the redirection of phone calls to the toll-free number to URS indicates nothing more than that a third-party

15

debt collector was retained to collect debts owed to Capital One Bank, the possibility of which is identified in the Letter itself.  <u>See</u> Am. Compl. ¶ 10 ("If your account is being serviced with one of our external agencies, they will be able to assist you and will notify us when you have made acceptable arrangements with them.").  In fact, Rogers affirmatively alleges in his proposed amended complaint that he had received calls regarding his debt from URS before he received the Letter, and therefore he clearly knew that URS was attempting to collect his debt. <u>See</u> Proposed Am. Comp. ¶ 12 ("In January 2010, Rogers received one or more calls from United Recovery . . . concerning the debt.").  Rogers simply has not identified any wrongful actions taken by URS that could give rise to liability for violating the FDCPA.  Indeed, Rogers does not even allege that he actually called the toll-free number contained in the Letter through which callers are purportedly connected to URS, nor does he claim that URS said anything improper during the phone calls he allegedly received in January 2010.  Therefore, URS's motion to dismiss is granted.

## C.  Class Action Validity

The defendants also move, in the alternative, to strike the class allegations in Rogers' amended complaint.  Rule  23(d)(1)(D) of the Federal Rules of Civil Procedure provides that a court presiding over a putative class action may "require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly . . . ." Pursuant to this rule, a defendant may move to strike class allegations prior to class certification proceedings "if the inquiry would not mirror the class

certification inquiry and if resolution of the motion is clear." See, e.g., Jaffe v. Capital One Bank, No. 09 Civ. 4106(PGG), 2010 WL 691639, at *10-11 (S.D.N.Y. Mar. 1, 2010) (quoting In re Initial Pub. Offering Sec. Litig., 21 MC 92(SAS), 2008 WL 2050781, at *2 (S.D.N.Y. May 13, 2008)).  A court may grant a motion to strike and order deletion of portions of a complaint's class claims where the basis for the motion to strike is distinct from the issues that "would be decided in connection with determining the appropriateness of class certification under Rules 23(a) and 23(b)" of the Federal Rules of Civil Procedure and it is "clear that plaintiffs cannot possibly prove the deleted portions of those claims." Rahman v. Smith & Wollensky Rest. Group, No. 06 Civ. 6198(LAK)(JCF), 2008 WL 161230, at *3 (S.D.N.Y. Jan. 16, 2008).  Rule 23(a) establishes the prerequisites for a class action, i.e., numerosity, commonality, typicality, and Rule 23(b) identifies the types of class actions that may be maintained.  Fed. R. Civ. P. 23(a)-(b).

The defendants argue that the class action allegations of the amended complaint must be stricken here because of a defect falling outside the scope of either Rule 23(a) or 23(b).  The amended complaint defines the proposed class as:

> All consumers to whom a Letter in the form of the Letter was  sent by the Defendants into the State of Connecticut within one year prior to the filing of this action  and which was not returned as undeliverable.

Am. Compl. ¶ 20.  The defendants contend that the class is overbroad on its face in that certain of Rogers' claims do not necessarily apply to everyone in the proposed class.  Specifically, Count III alleges a violation of 15 U.S.C. §

17

1692e(11),[4] which requires a particular disclosure in the initial communication

with the consumer.  Count VI alleges a violation of 15 U.S.C. § 1692g(a),[5] which

requires a particular disclosure within five days after the initial communication

with the  consumer.  However, Rogers alleges that the Letter did not contain the

required disclosures and further that the Letter "was the first written

communication transmitted to Rogers and received by Rogers in which any 'debt'

was noted with reference to Rogers' account with Capital One [Bank]."  Am.

Compl. ¶ 12.

     The defendants contend that in order for any of the class members to state

a claim against them for the same alleged violations, the class members must not

_____

[4]  This provision prohibits the following conduct:  "The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action."  15 U.S.C. § 1692e(11).

[5]  This provision states:  "Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall . . . send the consumer a written notice containing – (1) the amount of the debt; (2) the name of the creditor to whom the debt is owed; (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector; (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor."  15 U.S.C. § 1692g(a).

only have received the Letter, but the Letter also must have been the first communication with each class member.  By defining the class as those who received the Letter as opposed to those who received the Letter as the initial communication regarding their debt, the defendants claim, the class is overbroad and the class allegations should be stricken pursuant to Rule 23(d)(1)(D). However, the defendants' reasoning is flawed because Rogers' claims in this case are not limited to claims for violation of FDCPA provisions requiring certain disclosures to be made in an initial communication by a debt collector.  Instead, Rogers additionally alleges that, through the Letter, the defendants violated the FDCPA in four distinct ways:  (1) by falsely represented the character, amount, or legal status of the debt in violation of 15 U.S.C. § 1692e(2) (Count I); (2) by using false representations or deceptive means to collect or attempt to collect a debt in violation of 15 U.S.C. § 1692e(10) (Count II); (3) by using the name of a business, company, or organization other than the true name of the debt collector's business, company, or organization in violation of 15 U.S.C. § 1692e(14) (Count IV); and (4) by using unfair or unconscionable means to collect or attempt to collect any debt in violation of 15 U.S.C. § 1692f (Count V[6]).  Violation of these provisions does not turn upon whether or not the Letter was sent as an "initial communication."  Therefore, the relief requested by the defendants – striking Rogers' class allegations in their entirety – is plainly overbroad, as only two of

---

[6]  As noted by Rogers in his memorandum in opposition, the amended complaint inadvertently mislabels this Count as "Count VI," when in fact it should be labeled "Count V."

Rogers' six FDCPA claims require that the Letter have been sent as the initial communication to Rogers concerning his debt.

The defendants further argue that the proposed class could not be certified because the individual question of whether each class member received the Letter as the initial communication concerning his or her debt would predominate over common questions.  However, the predominance criterion is a Rule 23(b) requirement, and therefore is not a proper basis for a motion to strike class allegations.  See Rahman, 2008 WL 161230, at *3 (stating that the sufficiency of class allegations are not properly determined in the context of a motion to strike "where the issues raised in the motion to strike are the same ones that would be decided in connection with determining the appropriateness of class certification under Rules 23(a) and 23(b)").  Accordingly, the defendants' motions are denied insofar as they seek to strike Rogers' class allegations.  The Court will address issues related to the appropriateness of maintaining this case as a class action at the class certification stage.

## IV. MOTION TO AMEND

Rogers seeks leave from the Court to amend his complaint pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure.  Rogers' proposed amendments would eliminate his originally pleaded claims under the Connecticut Unfair Trade Practices Act and for common law fraud, and would also incorporate additional claims against the Capital One Defendants for violations of the CCPA and regulations promulgated thereunder.

20

Rule 15(a)(2) provides that "[t]he court should freely give leave [to amend a pleading] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  The "grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason . . . is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." Foman v. Davis, 371 U.S. 178, 182 (1962).  "Where it appears that granting leave to amend is unlikely to be productive, however, it is not an abuse of discretion to deny leave to amend."  Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993).  One appropriate basis for denying leave to amend is that the proposed amendment is futile.  Foman, 371 U.S. at 182; see also Health-Chem Corp. v. Baker, 915 F.2d 805, 810 (2d Cir. 1990) ("[W]here, as here, there is no merit in the proposed amendments, leave to amend should be denied.").  An amendment to a pleading is futile if it fails to state a claim and therefore, could not withstand a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Dougherty v. North Hempstead Bd. Of Zoning Appeals, 282 F.3d 83, 88 (2d Cir. 2002); Nettis v. Levitt, 241 F.3d 186,193 (2d. Cir. 2001).

To withstand a Rule 12(b)(6) motion to dismiss, a complaint must plead sufficient facts to give the asserted claims facial plausibility.  See Iqbal, 129 S. Ct. at 1949.  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.

21

### A.  Proposed CCPA Claim in Count I

In Proposed Count I, Rogers alleges that the Capital One Defendants violated Connecticut Agencies Regulations § 36a-647-6(2)(A), promulgated under the CCPA, by making false representations regarding the character, amount or legal status of Rogers' debt.  Specifically, Rogers alleges that the Letter falsely represented that Rogers' debt remained in the hands of Capital One Bank when, in fact, it was transferred to Capital One Services and URS for handling; failed to state the amount of the debt; created confusion regarding continued accrual of interest; and created confusion regarding Capital One Services' participation as the servicer of the subject account.  Proposed Am. Compl. ¶¶ 54-58.

Connecticut Agencies Regulations § 36a-647-6(2)(A) provides, in relevant part:

> A creditor shall not use any fraudulent, deceptive, or misleading representation, device or practice in connection with the collection of any debt.  Without limiting the general application of the foregoing, the following conduct is a violation of this section:  (2) The false representation of:  (A) The character, amount or legal status of any debt . . . ."

Based upon the text of the Letter and the Capital One Defendants' compliance with the disclosure requirements of the CCPA, the claims asserted in Count I fail as a matter of law.

The only representation the Letter contains regarding Capital One Bank is a statement identifying it as Rogers' creditor.  Proposed Am. Compl. ¶ 14.  The Letter is sent by Capital One Services and identifies Capital One Services as the "current servicer of your Account" unless "another servicer . . . has been

separately disclosed to you." Id. ¶¶ 14–15.  The Letter also alerts Rogers to the possibility that his account "is being serviced with one of our external agencies." Id. ¶ 14.  Therefore, it is clear from the Letter that Rogers' account is being serviced by Capital One Services.  In addition, Rogers was already aware that an external agency was involved in the collection of his debt, as he alleges in his Proposed Amended Complaint that he "received one or more calls from United Recovery . . . concerning the Debt" in January 2010.  Id. ¶ 12.  Based on Rogers' pleading that he was aware URS was involved in handling the collection of his debt due to phone calls he received prior to the Letter along with the Letter's disclosure that the account is being serviced by Capital One Services, the Letter does not misrepresent the status of Rogers' debt.

Rogers also asserts the Letter is "patently confusing and misleading" regarding continued accrual of interest and other charges that might change the total amount due.  Id. ¶ 57-58.  The body of the Letter indicates that, until arrangements for an acceptable payment plan have been made, Rogers' account will continue to accrue interest under his current credit agreement with Capital One Bank.  Id. ¶ 14.  The reverse side of the letter also includes a standard disclosure stating:  "Because interest, late charges, and other charges might change from day to day as provided in your agreement, the amount due on the day you pay may be larger."  Id. ¶ 15.  Rogers fails to allege facts explaining how this standard disclosure regarding accrual of interest and other fees, which is clear on its face, constitutes a misleading representation.  See Williams v. OSI Educational Services, Inc., 505 F.3d 675, 679 (7th Cir. 2007) (ruling that a

disclosure that interest will accrue at a rate specified in credit agreement was "entirely clear on its face").  Indeed, courts have held that the omission of such a disclosure could be deemed misleading.  See, e.g., Dragon v. I.C. System, Inc., 483 F. Supp. 2d 198, 201-03 (D. Conn. 2007).  Therefore, the Letter's accrual disclosure does not constitute a misrepresentation.

Additionally, although Section 36a-647-6(2)(A) prohibits misrepresentations regarding the amount of a debt, unlike the FDCPA, it does not affirmatively require that any particular communications include the amount of the debt. Compare 15 U.S.C. § 1692g.  Since the Letter makes no representations regarding the amount of the debt, it does not violate the Regulation.  Therefore, Rogers' proposed claim under Section 36a-647-6(2)(A) fails as a matter of law, and an amendment to include such a claim is futile.

## B.  Proposed CCPA Claim in Count II

In Proposed Count II, Rogers alleges that the Letter violates Connecticut Agencies Regulations § 36a-647-6(12) because it does not "meaningfully disclose" that it is an attempt to collect a debt.  Proposed Am. Compl. ¶ 67.  This Regulation provides, in relevant part:

> A creditor shall not use any fraudulent, deceptive, or misleading representation, device or practice in connection with the collection of any debt.  Without limiting the general application of the foregoing, the following conduct is a violation of this section:  (12) The failure to disclose clearly in all communications made to collect a debt . . . that the creditor is attempting to collect a debt.

Conn. Agencies Reg. § 36a-647-6(12).

24

Based upon the plain text of the Letter, the CCPA claim asserted in Count II
fails as a matter of law.  The front page of the Letter directs the Plaintiff to the
reverse side with the following bold-type, all capitalized notice:  "NOTICE:
PLEASE SEE REVERSE SIDE FOR IMPORTANT INFORMATION."  Proposed Am.
Compl. ¶ 14.  The reverse side of the Letter clearly states in bold print, on a line
by itself:  "This is an attempt to collect a (consumer) debt (claim).  Any
information obtained will be used for that purpose."  Id. ¶ 15.  This clear
disclosure does not violate the Regulation, despite the fact that it appears on the
reverse side of the Letter, because it was accompanied by a "prominent
instruction" on the first page warning of important information on the reverse
side.  See McStay v. I.C. System, Inc., 308 F.3d 188, 191 (2d Cir. 2002) ("[W]hen a
prominent instruction in the body of the Letter warns there is important
information on the reverse side, a reasonable reader, even if unsophisticated,
would turn the paper over and read the back."); Colomon v. Jackson, 988 F.2d
1314, 1319-20 (2d Cir. 1993) ("[E]ven the 'least sophisticated consumer' can be
presumed to possess a rudimentary amount of information about the world and a
willingness to read a collection notice with some care."); Gaetano v. Payco of
Wisconsin, Inc., 774 F. Supp. 1404, 1411 (D. Conn. 1990) (approving collection
notice even though required disclosures were printed only on the back of the
notice, since language on the front directed consumers to read the reverse).

In addition to the clear disclosure on the reverse side of the Letter, the text
of the Letter on the first page makes it clear that the purpose of the Letter is to
collect a debt, as it includes information on how to make payment arrangements

25

to in order to resolve the debt.  Proposed Am. Compl. ¶ 14.  Therefore, Rogers'
proposed claim under Section 36a-647-6(12) fails as a matter of law, and an
amendment to include this claim is futile.

### C.  Proposed CCPA Claim in Count III

In Proposed Count III, Rogers alleges that the Capital One Defendants
violated Connecticut Agencies Regulations § 36a-647-6(11) which states, in
relevant part:

> A creditor shall not use any fraudulent, deceptive, or misleading
> representation, device or practice in connection with the collection
> of any debt.   Without limiting the general application of the
> foregoing, the following conduct is a violation of this section:  (11)
> The use of any other false representation or deceptive means to
> collect or attempt to collect any debt . . . concerning a consumer
> debtor . . . .

Based upon the text of the Letter, the claims asserted in Count III fail to
state a claim upon which relief can be granted.  Rogers asserts the Letter "lures
unsuspecting Consumers into negotiations with seasoned debt collectors" by
using attractive repayments offers and failing to make any meaningful or clear
disclosure that the Letter is an attempt to collect a debt or of the identity and role
of the entity collecting the debt.  Proposed Am. Compl. ¶¶ 74–76.  However, as
discussed above in Sections IV.A and B, the Letter clearly references Capital One
Services as the servicer of Rogers' account and clearly discloses that it is an
attempt to collect a debt.  Accordingly, this proposed claim cannot withstand a
motion to dismiss and is therefore futile.

### D.  Proposed CCPA Claim in Count VII

Finally, in Proposed Count VII, Rogers alleges that the Letter violates the CCPA's prohibition against the use of "any abusive, harassing, fraudulent, deceptive or misleading representation, device or practice to collect or attempt to collect any debt."  Proposed Am. Compl. ¶ 96 (quoting Conn. Gen. Stat. § 36a-646).

Rather than asserting any new factual allegations in support of Proposed Count VII, Rogers rests entirely on the allegations supporting his other CCPA claims.  As discussed above in Sections IV.A through C, in light of the clear disclosures contained in the Letter, Rogers has failed to plausibly allege that the Letter contains fraudulent, deceptive, or misleading representations in violation of the CCPA.

In addition, the Proposed Amended Complaint fails to allege facts supporting a claim that the Capital One Defendants' actions in attempting to collect the debt rose to the level of abuse or harassment.  Rogers alleges that the Letter is the first written communication he received concerning his debt.  Proposed Am. Compl ¶ 12.  Prior to receiving the Letter, Rogers merely states that he received "one or more calls" from the Capital One Defendants and URS regarding his debt, but does not indicate what was communicated to him during those calls.  Id. ¶ 13.  Accordingly, this claim is futile as it cannot withstand a motion to dismiss pursuant to Rule 12(b)(6).

In summary, Rogers' motion for leave to file an amended complaint is denied insofar as he seeks to add additional claims against the Capital One

Defendants for violation of the CCPA and regulations promulgated thereunder. All of the alleged violations in Proposed Counts I, II, III and VII that the Plaintiff seeks to add fail to state a claim upon which relief can be granted, and are therefore futile.  Rogers' motion is granted insofar as he seeks to amend his complaint to eliminate his withdrawn claims under the Connecticut Unfair Trade Practices Act and for common law fraud.

## V.  CONCLUSION

Based upon the above reasoning, the Capital One Defendants' motion to dismiss [Doc. #20] is GRANTED IN PART and DENIED IN PART, and URS's motion to dismiss [Doc. #22] is GRANTED.  As all claims against Capital One Bank and URS have been dismissed, the Clerk is directed to terminate these defendants from this action.  Rogers' motion to amend [Doc. #43] is GRANTED IN PART and DENIED IN PART.  Rogers' request to amend his complaint to add proposed claims under the CCPA is denied because such claims are futile.  Rogers is directed to file an amended complaint against Capital One Services by February 28, 2011 eliminating his withdrawn claims.

IT IS SO ORDERED.

_____/s/_____
Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut:  February 19, 2011.

28